# Exhibit "D!%"

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE** | § | |
| | § | |
| **LAWRENCE CHARLES DON** | § | **Case No. 10-42622** |
| 700 Eagles Landing Blvd. | § | |
| Oak Point, Texas 75068 | § | **Chapter 11** (Small Business) |
| SSN: xxx-xx-7124 | § | |
| | § | |
| **Debtor** | § | |

---

**CHAPTER 11 SMALL BUSINESS DISCLOSURE STATEMENT TO**
**SECOND PLAN OF REORGANIZATION FOR LAWRENCE CHARLES DON**

---

**ARTICLE I:**
**INTRODUCTION, SUMMARY**
**AND VOTING INFORMATION**

### A. Identity of the Debtor

LAWRENCE CHARLES DON, ("Don" or "Debtor") is a self-employed individual operating as a small business who filed his voluntary Chapter 11 case in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Court") on August 4, 2010. He has operated as a "debtor-in-possession as defined in the chapter 11 provisions of the Code (references to "Code" are to the Bankruptcy Code, which comprises Title 11 of the United States Code, as amended).

### B. Purpose of Disclosure Statement; Source of Information

Debtor submits this Chapter 11 Small Business Disclosure Statement ("Disclosure Statement") related to his Second Plan of Reorganization dated January 31, 2011 ("Plan"). This Disclosure Statement is provided pursuant to §1125 of the Code to all of the Debtor's known Creditors entitled to vote on the Plan in connection with the solicitation of acceptances of its Plan. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable claim holder, typical of a holder of a Claim, to make an informed judgment in exercising its rights either to accept or reject the Plan. A copy of the Plan is attached hereto as **Exhibit "A"**. This Disclosure Statement describes the background and causes of the Debtor's Case, the Debtor's actions during Case, the treatment of claims under the Plan and means for implementation of the Plan. Please review the Disclosure Statement and Plan in full in before voting on the Plan. Please consult your legal or financial

advisors if you have any questions or concerns about the Plan's effect. Financial and accounting information contained herein has been developed or provided by the Debtor.

## C. Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a Debtor is authorized to reorganize its business activities for its own benefit and that of its creditors. Formulation of a Plan is the principal purpose of a Chapter 11 reorganization case. A Plan sets forth the means for satisfying claims against the Debtor. After the Debtor proposes a plan, and subject to disclosure such as contained herein, the Debtor may seek to implement a plan by seeking confirmation by the bankruptcy court. In this Case, the Plan must be accepted by holders of certain claims that fall into certain classes defined in the Plan. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a Plan. This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

## D. Brief Summary of the Plan

The Plan provides for grouping certain creditors into like-classes. Each class will receive the same treatment of its claim. For impaired classes (i.e. those that will not receive full payment of their claims immediately upon the effective date of the Plan), the Plan provides for nearly full payment over period of months. For unsecured creditors, that amount of time is 24 months. Secured creditors will be treated in full and will retain their liens, but should consult the specific terms of the Plan for description of their treatment.

## E. Explanation of the Process of Confirmation

 Confirmation of a Plan requires that certain classes of claims for to accept the Plan, and even if they do, other tests set forth in the Code must be passed. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a Plan of reorganization be in the best interests of Claimants. It generally requires that the value to be distributed to Claimants may not be less than such parties would receive if the Debtor were liquidated under Chapter 7 of the Code.

Acceptance of the Plan by creditors whose claims are deemed "impaired" is important. In order for the Plan to be accepted by a class of claims, the constituent creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims in the class must vote to accept. Note that these ratios are determined with respect to only the creditors that actually vote in a class.

The Court may confirm the Plan despite the rejection of the Plan by certain classes so long as the at least one (1) impaired class votes to accept the Plan and that the Court finds that the Plan meets the best interests of creditors tests and other requirements for confirmation of a Plan set forth in Section 1129(b) of the Code.

Confirmation of the Plan discharges the Debtor from all of his pre-confirmation debts and liabilities except as expressly provided for in the Plan and §1141(d) of the Code. Confirmation makes the Plan binding upon the Debtor and all claimants regardless of whether or not they have accepted the Plan.

### F.  Voting Procedures

Claimants in Class 1 are not impaired under the Plan, and are deemed to have accepted the Plan.  Therefore, they do not need to vote on the Plan.

Claimants in classes 2 through 4 are impaired as defined by §1124 of the Code.  The Debtor seeks holders of allowed claims to accept of the Plan.  Each holder of an Allowed Claim in Classes 2, 3 and 4 may vote on the Plan by completing, dating and signing the enclosed ballot and transmitting to the address noted below.

A Ballot must be transmitted so that it is received on or before **5:00 p.m.** CST on **MARCH 21, 2011** (the "Voting Deadline").

> **Ballots Don Plan**
> **c/o I. Richard Levy, Esq.**
> **Block & Garden, LLP**
> **5949 Sherry Lane, Suite 900**
> **Dallas, Texas  75225**

Except to the extent permitted by the Bankruptcy Court pursuant to Rule 3018 of the Bankruptcy Rules, ballots that are received after the Voting Deadline will not be accepted or used by the Debtor in connection with the Debtors' request for confirmation of the Plan.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt) acceptance and revocation or withdrawal of ballots or master ballots will be initially determined by the Debtor and submitted to the Bankruptcy Court if any challenge arises.

### G.  Confirmation Hearing; Objections

The Court has set a hearing to consideration confirmation of the Plan for **MARCH 24, 2011** at **1:30 p.m.** CST. in the court room of the Honorable Brenda Rhoades, Chief U.S. Bankruptcy Judge for the Eastern District of Texas located at 660 North Central Expressway, Suite 300B, Plano, Texas  75074.

Objections to the confirmation of the Plan or the final approval of the Disclosure Statement must be in writing and filed on or before **March 17, 2011**, with a copy served on the Debtor, the Debtor's attorneys and the U.S. Trustee's office.

A copy of the Court's Order Conditionally Approving Debtor's Disclosure Statement *et al.* that was entered of record on February 15, 2011 setting the hearing dates, objection and voting

deadlines and containing other important matters is included with the transmission of this Disclosure Statement to parties in interest.

### H. Other Conditions for Confirmation

"Best Interests" Test--The Code requires that for confirmation of a Plan each impaired class of claims must either accept the Plan or the class claimants must receive treatment that is better than if the Debtor was liquidated under a hypothetical Chapter 7 case under the Code. This standard is referred to as the "best interests" test, and the Debtor believes that the Plan does provide all impaired creditors substantially more than they could expect to receive in a hypothetical Chapter 7 liquidation.

In that regard, the Debtor has prepared a liquidation comparison attached as **Exhibit "D".** As it demonstrates, in a hypothetical Chapter 7 liquidation, the Debtor's unsecured creditors would receive a substantially smaller distribution than the Plan provides because the Debtor makes more assets available to creditors under the Plan than he would be required to under a chapter 7 case. For example, the Debtor is not required to provide that his future income would be dedicated toward claim payments nor would he would he required to sell or refinance his homestead as an alternative. Accordingly, since the Plan proposes essentially payment in full to all impaired creditors, the Debtor submits that all impaired classes receive more under the Plan than they would receive in a Chapter 7 liquidation. Accordingly, the Debtor believes that the Plan satisfies the requirements of Section 1129(a)(7).

"Fair and Equitable" Test--The Court may confirm the Plan even though one or more classes of claims votes to reject. Assuming other requirements are fulfilled, as long as one or more impaired classes of claims vote to accept the Plan and the Court finds that the Plan is "fair and equitable" to non-accepting classes §1129(b) of the Code, the Court can confirm the Plan. What the Code provides is "fair and equitable" treatment depends on the type of claim involved. As to secured claims, the standard is met if the holders of secured claims retain liens securing their claim and receive deferred cash payments, with interest, totaling the full amount of their claim, as may be determined by the Court upon an objection. As to unsecured claims, treatment is "fair and equitable" if unsecured creditors receive cash payments in the amount of the value of remaining non-exempt assets of the estate (the Code sets aside certain assets for individual debtors that are excluded from the calculation). Unsecured claims do not need to be repaid in full for the Plan to meet this test. The Debtor believes that the Plan provides treatment that the Court will find to be "Fair and Equitable" and will, if necessary, seek to have the Plan confirmed under §1129(b).

### I. Representations

The information contained in this Disclosure Statement has been developed, assembled and derived by and from the Debtor's records, court filings, non-privileged communications with his attorney and other sources the Debtor deemed appropriate, unless otherwise specifically stated. In preparation of this document, the Debtor has used his best efforts to accumulate and use accurate and complete information. However, the information set forth herein cannot be certified to by the Debtor other than as to the best of his own knowledge, information and

belief.  Values assigned to assets, financial projections or statements herein are made subject to the Debtor's estimates or   certain widely available resources, and were not prepared with the supervision of or under the standards that an accountant, appraiser or other relevant professional might employ, adopt or use as reference. **THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO ANY AUDIT.   FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF INHERENT PROBLEMS WITH MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS FULLY ACCURATE OR RELIABLE EXCEPT THAT DEBTOR'S USED HIS BEST EFFORTS IN CALCULATING ADOPTING OR PRESENTING SUCH INFORMATION SUBJECT TO BEST OF HIS PERSONAL KNOWLEDGE AS OF THE DATE HEREOF.**

The Debtor has requested the Court to preliminarily review and conditionally approve this Disclosure Statement in order to expedite transmission of Plan materials to parties in interest and creditors entitled to vote on the Plan under procedures governing small business plans of reorganization.  The Court has preliminarily found that the Disclosure Statement contains information of the kind and in sufficient detail adequate to enable a hypothetical, reasonable creditor typical of a member of one of the voting classes to make an informed judgment about the Plan.  However, the Court's review is subject to further review under the small business rules by the Court on its own or based on objections by parties in interest.  **THE CONDITIONAL APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT.**

**ARTICLE II:**
**FINANCIAL PICTURE OF THE DEBTOR**

### A.  History and Background of the Debtor

Mr. Don has been involved in the planning, development and construction of multi-family real estate projects for nearly 30 years.  Most of his real estate projects have been constructed in various parts of the Southwest.  As with many real estate development entrepreneurs, Mr. Don often faced years of great plenty and years of dearth during his long career, but he has been overall very successful.

Approximately ten years ago, Mr. Don's focus in multi-family housing underwent a sea-change as he devoted himself to researching and pioneering concepts in modular construction.  Mr. Don believed he could develop new techniques to deliver high-rise steel framed housing units that would out-compete the more expensive, but traditional, concrete construction methods.  While a number of years passed, after teaming with a Dallas based structural engineer, Mr. Victor Lissiak, Jr., and through tremendous expenditures of time and

money in developing models, engineering studies and testing, Mr. Don and his partner finalized a manufactured housing method that received a U.S. Patent No. 6,651,393 in late 2003.

The patent was the subject of a number of proposed ventures, but Mr. Don and Mr. Lissiak eventually tested it first in a project in Tyler known as the Stretford which was completed in 2008 and a joint-venture residential marina development in South Padre island. Mr. Don received income from these developments in the form of licensing fees and by retention of partnership interests.

Unfortunately, the real estate downturn that began with the market crash in late 2008 has affected the return Mr. Don expected from development activities. His income in 2009 decreased significantly. Also, due to the lender's failure to provide him with a home equity loan (described in the next section), he was forced to surrender his interest in the South Padre venture in exchange for the assumption by a partner of his share of the debt.

However, beginning in August of 2009 and through calendar 2010, Mr. Don has been actively working with at least one local development company, Gables Residential, to license his technology or to partner in modular developments expected to throw off income beginning in the next few months.

### B. Wells Fargo Home Equity Loan approved; but turns from boon to disaster

In 2007, during very good times in the business, Mr. Don built his dream home in Oak Point, Texas near Lake Lewisville. He put over $800,000 in personal funds into the construction and financed about $500,000. His plan in building large equity in the home was that during difficult times, he could borrow against the home equity to tide him over until the next project succeeded. He looked to borrow approximately $200,000 from his substantial equity in his home to tie him over until the next project started generating income.

In August of 2009, Mr. Don was introduced to a Wells Fargo banker in the high wealth group to assist him in obtaining a home equity loan. His mortgage loan at that time had been converted into a permanent fixed mortgage upon completion of construction. The loan was serviced for a time by GMAC Mortgage servicing, but had come to be transferred to America's Servicing Company ("ASC"). Unbeknownst to Mr. Don, ASC was a wholly owned subsidiary of Wells. In September, Wells approved a home equity credit line for Mr. Don on the basis of his prior income, excellent credit score and meticulously prepared documents.

Unfortunately, ASC's role in the story turned dastardly when a single question arose prior to loan closing. In October, an issue arose due to a faulty credit report that listed both GMAC and ASC as holding mortgages on the homestead. Although having been cleared for the loan, Wells asked Mr. Don to remedy the problem. Mr. Don quickly demonstrated that the purported two loans were in reality the same loan and took the novel step of obtaining a pre-closing title report from Hexter Fair Title to that effect. Further, he gave the Wells' bankers copies of the change in servicing letter from ASC itself. The Wells banker, blaming his underwriting department, required Mr. Don to clear up the discrepancy further. The painful

truth was, however, that ASC was to blame for failing to properly report the transfer of servicing rights from GMAC to itself.  In further escalation of the problem, ASC failed to respond to Mr. Don's repeated attempts to clear up the credit issues.  In November, while ASC was silent, Mr. Don even obtained verification from GMAC that the loan servicing had been transferred to ASC and its file closed.  Wells still required proof of the payment of the GMAC loan, although GMAC was not the note holder, but simply the servicing entity for the EMF Mortgage Fund that held title to the note--and which continued to hold title to the mortgage while contracting the servicing aspect to Well's subsidiary ASC.  It was now that Mr. Don learned for the first time that ASC was a wholly owned subsidiary of Wells.  Adding further misery, Mr. Don obtained his Experian credit report with a score of 783 despite the mistaken double booking, which Wells now ignored.

Into December of 2009, Wells reiterated its promise to close the loan subject to clearing up the ASC matter, but ASC would not respond to Mr. Don.  As a result, and because Wells asserted that it could not be sure who held title to the mortgage without verification by ASC, Mr. Don began to withhold his mortgage payments until ASC cleared up the matter.  Instead of solving the problem, in January, Mr. Don was notified by Wells that it would not extend him the loan after-all—for the trumped up reason that it could not timely obtain certified copies of Mr. Don's tax returns from the IRS!

### C. Wells later claims to own the mortgage itself

After withholding payments for ASC for two months due its failure to clear up the credit issues, Mr. Don received notice of acceleration and intent to foreclose from the Brice, Vander Linden & Wernick law firm.  Who did they claim was their client?  Wells Fargo, of course.  Mr. Don engaged attorney Robert Holmes to negotiate on his behalf and to prevent the foreclosure by legal action, if necessary.  In March, an initial deal was struck to prevent the foreclosure and Mr. Don made all his back payments.  However, the deal was premised on Wells undertaking to provide copies of the *actual* mortgage and lien documents to Mr. Don.  Shockingly, Mr. Don received certain documents, but they turned out to be the *very same ones* that he had given the Wells banker during the loan process.  Needless to say, Wells failed to clear up the ownership of the mortgage issue or to repair the false credit report that ASC had made to the credit agency(ies).

Mr. Don was unable to obtain another equity loan due to the denial by Wells and their subsequent acceleration of the loan.  Mr. Don found no other recourse than to withhold payments to ASC again.  Like clockwork, notice of foreclosure was sent him for the first Tuesday of the following month.

### D. Mr. Don files a chapter 13 petition *pro se*

On May 26, 2010, and in order to save his home from the wrongful actions of Wells, Mr. Don filed a chapter 13 bankruptcy petition *pro se* in the U.S. Bankruptcy Court for the Eastern District of Texas, Sherman division.  His ability to pursue a chapter 13 case was short lived as the Chapter 13 Trustee questioned his qualification for chapter 13 relief.  As a result, he voluntarily dismissed the chapter 13 case in late July.

### E. Chapter 11 Case; Post-Petition Operations

On August 4, 2010, Mr. Don filed a voluntary petition under chapter 11 in the same Court. Again, he began the case by representing himself. He elected to have the case treated as a small business case under special provisions of chapter 11 that would allow him to streamline the proposal of a plan of reorganization. He filed his first Plan of Reorganization only two weeks after filing the case. However, he had some problems navigating chapter 11 without counsel, and after learning of the need for a disclosure statement relating to his plan, he amended the Plan and filed a disclosure statement in late October. At nearly the same time, the U.S. Trustee's office filed a motion to dismiss the case due in large part to an inability to demonstrate the likelihood of success under his plan. However, he pursued confirmation of the plan and had a hearing in late December. At that hearing on confirmation of the plan, the bankruptcy Judge denied confirmation and suggested that Mr. Don seek advice of competent counsel. Shortly thereafter, he was referred to Mr. Levy, and after discussion, Mr. Don engaged Mr. Levy to assist him in amending his plan in order to qualify for confirmation and to assist him in resolving the U.S. Trustee's Motion to dismiss his case.

Mr. Levy's application to be employed was filed on December 30, 2010 and an order of employment was entered by the Court in January of 2011.[1]

### F. U.S. Trustee's Motion to Dismiss subject to agreed order

Mr. Levy, on behalf of Mr. Don reached an agreement with the U.S. Trustee's office resolving the Motion to dismiss. Under the agreement, Mr. Don will seek to propose and confirm a new or restated plan of reorganization before March 31, 2011, unless further extended by agreement. This agreement complies with the basic provisions of the chapter 11 small business that requires a Debtor to file a plan on or before the expiration of 180 days from the petition date (here, by approximately February 4, 2011) and confirmation a plan within 300 days after the petition date (here, approximately May 31, 2011).

### G. Filing of Second Plan of Reorganization

Mr. Don has filed this Plan on January 31, 2011. He expects to seek preliminary approval of this disclosure statement as the court hearing docket may allow, and then transmit to creditors for voting purposes in time to meet the March 31, 2011 deadline. If necessary, he will seek an agreement form the U.S. Trustee to extend that deadline for a short period in order to allow for the statutory notice period for a confirmation hearing.

### ARTICLE III:
### ANALYSIS OF ASSETS AND LIABILITIES

---

[1]     Mr. Levy, initially employed through his own firm, I. Richard Levy, P.C., has recently joined the firm of Block & Garden LLP, and will move for an order amending his employment in this case concurrently with the confirmation process.

### A. Bar Date for Claims; amounts of claims

The bar date for the filing of non-governmental proofs of claim was December 2, 2010. The claim register reflects a total of 11 proofs of claim filed. Unsecured claims totaled $60,558 and secured claims (consisting of 2 cars loans from Toyota Motor Credit) totaled $18,800. The debtor has scheduled some other creditors claims without noting objection, and according to applicable rule, they will have an allowed claim in the case as well. As summary of the Debtor's total claims is attached hereto as **Exhibit "B"**.

### B. Wells fails to file claim; objection to Wells and ASC's lien claims

Neither ASC nor Wells Fargo timely filed a proof of claim relating to the home mortgage , which the Debtor estimates had a balance of approximately $485,000 as of the petition date. Mr. Don has authorized and directed Mr. Levy to prepare and file an adversary proceeding against Wells Fargo and ASC objecting to their asserted secured claim, seeking determination of the value, extent and validity of the lien on their homestead, a declaration of the amounts due and rightful note holder, and seeking damages under common law and the Fair Credit Reporting Practices Act.. Mr. Don expects for that case to be filed on or before the end o February.

### C. Summary of Assets available to the estate

The Debtor's assets are described in detail in the schedules filed with the bankruptcy court at the outset of the case. Importantly, the only significant asset of the Debtor that is not subject to exemption for the bankruptcy estate through Texas law is the Debtor's 1/2 interest in the U.S. Patent described in more detail below. The Debtor estimates that his interest in the Patent is worth $150,000; however, that value of assumes the continued and ongoing involvement of the two inventors, including Mr. Don, listed on the Patent - substantial engineering and release of proprietary information is currently required for the implementation of the Patent technology. As this information is intricately involved in the personal knowledge of the Inventors and is mutually held by a Non-Compete Agreement between the Inventors, the release of which would be essential to the effective use of the Patent. Therefore, there are significant barriers to the realization upon the Patent by way of a sale or liquidation. The Debtor believes that highest and best use is for the Debtor to retain his interest in the Patent rights and to license or partner the technology into an income stream.

The Debtor also has agreed to make available his interest in the family homestead located in Oak Point Texas. The house is owned jointly by his wife and himself. His wife has agreed to the refinancing of the existing mortgage or sale of the home in order for the Debtor to fund the Plan payments from the portion of equity in the house that is his by joint ownership or community property. The home was originally built for a cost of over $1,334,000. However, the Debtor and his wife only borrowed approximately $500,000 of that cost. The home appraised for over $880,000 in relationship to the home equity loan that the Debtor sought to obtain last year. The Debtor calculates his own equity interest to equal or exceed $175,000 based on that valuation.

### D. Amendment of schedules.

Mr. Don filed the schedules and statements of affairs required by the bankruptcy Rules at the start of the chapter 11 case. Based on Mr. Levy's review, MR. Don has prepared amendments that have or will be filed concurrently herewith. Importantly, they more accurate reflect values of Mr. Don's non-exempt assets and further clarify Mr. Don's statement of exemptions of homestead items under Texas law.

## ARTICLE IV:
## MEANS TO EFFECT THE PLAN

Under the terms of the Plan, creditors with allowed claims will receive cash payments over the relevant period of time set forth in the Plan that will be derived from either or a combination of (1) the Debtor's business income generated over the relevant periods that is related to the use or license of certain unique technology and patent rights the Debtor owns in substantial part related to modular building; and/or (2) in the absence of sufficient income from business operations, from the sale or refinance of Debtor's residence. The Debtor has prepared projections forecasting expected business revenues and expenses beginning with periods following the expected Effective Date. These projections are based upon the current activity and historical revenues and the Debtor believes them to be feasible. The projections are attached hereto as **Exhibit "C".**

The alternative treatment of creditors by way of a sale or refinancing of the Debtor's homestead is feasible due to significant equity in the property described in the foregoing section. The Debtor's spouse, Nita Don, is not a debtor or joint debtor in the Case. However, she has agreed, to allow her interest in the homestead to be sold or refinanced in order to fulfill the terms of the Plan. However, she consents to the use of funds solely to the extent of Mr. Don's ½ interest in the homestead, and not to the extent of her own homestead rights. Nevertheless, if the Debtor is able to refinance his home, his wife consents to the imposition of a larger amount of debt on the home, including encumbering her interest, solely in order to allow the Plan to be confirmed and effected, and to the extent necessary.

Mr. Don has listed a number of assets in his schedules, as amended, that are described in his schedules and in the foregoing discussion. The values of the assets are not verified by firm appraisals. But for example, the only non-exempt property available to satisfy creditors would be the value of the ½ interest in the Patent, Mr. Don's ownership in two defunct real estate partnerships and possible recoveries under a lawsuit against a secured creditor and possibly a former attorney.

Mr. Don is in negotiations with certain real estate companies to license or otherwise utilize his patented technology. He believes that a contract or license agreement is forthcoming in the next few months. Based on past experience and success in business and in licensing the patent, he reasonably expects agreements or business arraignments will net sufficient funds for him to make all of the payments contemplated under the Plan. However, if they do not, Mr. Don will endeavor to refinance the mortgage on his homestead to realize from his

significant portion of the equity cushion in the home sufficient cash that may be necessary to fund the Plan.  Mr. Don believes that he can refinance the property within a short period of time and can fund payments to creditors if insufficient business income is available.  As a final alternative, Mr. Don will sell his home and undertakes to engage a realtor to market the property upon confirmation of the Plan.  Payments required to be made to creditors and the dates and terms are described in more detail in the following section and in the Plan.

## ARTICLE V:
## SUMMARY OF PLAN OF REORGANIZATION

### A. *Satisfaction of Claims and Debts:*

The treatment provided for in the Plan to holders of Allowed Claims will be in full settlement, release and discharge of their respective Claims or Debts.  On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.  If confirmed, the Plan will be binding on all creditors and classes of Claimants, whether they vote on this Plan or otherwise, and the Plan will be binding on all claimants, creditors and interest holders in its present form or as modified or amended as permitted herein.

The Debtor's Plan will break the existing claims into 4 categories of Claimants.  Only holders of allowed claims in Class 3 (secured claims) and Class 4 (unsecured claims) are entitled to vote to accept or reject the Plan.

Class 1 Claimants (Allowed Administrative Claims, Professionals and US Trustee) are not impaired and will be paid in cash and in full on the Effective Date of this Plan, or as may be agreed to in writing between the Debtor and the Creditor.  Professional fees are subject to approval by the Court as reasonable. This case will not be closed until all allowed Administrative Claims are paid in full. The Debtor is required to continue to make quarterly payments to the U.S. Trustee and may be required to file post-confirmation operating reports until this case is closed.  All Administrative Claims must be filed within 30 days after the Order of Confirmation.[2]

Class 2 Claimants (Allowed Priority or Secured Tax Creditor Claims) are not impaired and will be paid when due out of Available Cash, or where applicable by deferred cash payments with interest dating from the Effective Date.  The only presently known Class 1 claims are Denton County for 2010 property taxes asserted to be approximately $19,637.

---

[2] All other expenses, taxes and other amounts incurred by the Debtor in the ordinary course of his business or living after the Petition Date will be paid according to the terms under which they were incurred and are not treated under the Plan.  These include, but are not limited to, utilities, home maintenance (repairs and upkeep), food, clothing, medical and dental expenses, transportation (not including car payments), recreation, insurance (including homeowner's, life, health and auto) and reasonable business expenses.  Expenses or debts incurred after the Effective Date, even if of the type noted in the definition, are not considered Administrative Expenses.

<u>Class 3 Claimants</u>  (Secured Claims).

*Toyota Motor Credit:*  The Debtor has three known Secured claims.  The first two Secured Claims are owed to the same lender, Toyota Motor Finance, based on notes secured by the Debtor's two 2006 Lexus SUV vehicles.  The Debtor estimates that the vehicles are worth approximately $43,000 if sold by the Debtor to another private individual.  The balance owed on the cars is $18,800.  The Plan provides that the Debtor will repay these Allowed Secured Claims through equal monthly installments over a period of 24 months.  Toyota Motor Finance will retain their liens on the vehicles until paid in full.  Interest at 6% per annum will be applied to the principal balance owed and the separate payments will be made with respect to each vehicle.

*Home Mortgage Creditor*:  The Debtor's home mortgage is subject to a significant dispute.  However, the Debtor estimates that the amount owed on the mortgage note is $485,471.  The obligation is jointly owed by the Debtor and his spouse, and the property constitutes their duly recorded homestead.  The home cost approximately $1,330,000 to build and for real estate acquisition.  It is appraised by the Denton county appraisal district for $832,459.  Wells Fargo appraised it at $880,000 in late 2009 for purposes of approving a home equity loan.

As a result of actions of the secured creditor or related parties or servicers, the Debtor has filed, or will be filing if not on file as of the date hereof, an adversary complaint asking for the Court to determine the extent and validity of the purported lien on the property, the actual amount due, the rightful holder of the lien, and for damages for various causes of action including violation of the Fair Credit Reporting Act, common law fraud and negligence, and for other relief, including for attorneys fees.

The Plan provides for two alternative treatments for the claimant that may be found to hold an Allowed Secured Claim on the homestead.  First, equal monthly installments of the full Allowed Secured amount including interest calculated at 5% per annum, and extending over the remaining term of the loan.  The first payment will be made on the later to occur of the Effective Date or the date of the entry of a Final Order allowing the Secured Claim--unless otherwise ordered by the Court.  If the Debtor seeks to refinance or sell the homestead, the Debtor and his wife will seek authority of the Court to release any security interest and to attach such liens to an escrow to be set in an amount as determined by the Bankruptcy Court reasonably sufficient to pay off the Allowed amount of a Secured Claim.  The amount of the escrow proceeds to satisfy the Allowed Claim will be released to the party and on the terms adjudicated in the Adversary Proceeding.

<u>Class 4 Claimants</u> (Allowed Unsecured Claims) are impaired under the Plan, and will be treated by payment from Available Funds up to the full allowed amount of their claims through monthly installments over 24 consecutive months, with the first payment commencing as soon as possible after the Effective Date and with subsequent payments due on or before the 15th of the following month.  Any and all such payments to Class 4 Claimants are subject to sufficient Available Cash as set forth in the Plan.  Notwithstanding the Available Cash requirement, the first installment payment hereunder must be made on or before six (6)

months after the Effective Date of the Plan. If the Debtor is unable to commence payments due to Available Cash limitations as of the expiration of 2 months from the Effective Date, the Debtor will notify Class 4 Creditors of the expected date upon which payments will commence. The Debtor expects that the Class 4 claims will receive the full amount of their allowed claims, subject only to possible risks described in Article VI.

### B. Discharge of the debtor; Revesting of assets

Normally, the order confirming a Plan constitutes the order of discharge in chapter 11 cases. However, while the Debtor is treated under the small business provisions, he is also and individual, and there are certain restrictions on timing of a discharge order for individuals under chapter 11 Plans. The Plan provides that the Debtor is discharged from any and all liability or obligation on all Claims or Debts to the full extent provided in the Code, but Mr. Don may need to complete his plan payments in order for the discharge to take effect. Although payments to the home lender may extend for many years into the future, the Code provides and the Debtor intends to request the Court enter an order of discharge after the completion of payments to Class 1, 2 and 4 creditors and to Toyota Motor Credit, or approximately 2 years after the Effective Date. Notwithstanding anything to the contrary, the Debtor or Reorganized Debtor may seek such Discharge Order at any time or under any terms consistent with the Code, Rules, or in equity as the Court may Order.

Prior to the entry of a Final Order of Discharge, the entry of the Confirmation Order acts as an injunction against the commencement, continuance or taking of any action against the Debtor, Reorganized Debtor or the property of the estate as revested in the Reorganized Debtor, that would be contrary to a discharge as if the order on final discharge had been entered, including with respect to any Debt or Claim arising before the Petition Date or prior to the Confirmation Order. However, if the Debtor defaults in the Plan payments, a creditor may seek reversal of the Plan confirmation and/or the denial of a discharge.

### C. Amendment or modifications

The Plan can be modified at any time prior to confirmation, or even thereafter, if necessary or desirable to solve inconsistencies, rectify treatment of claim issues or to adapt to changes in circumstances. This disclosure Statement can likewise be modified or amended. Creditors will be notified of any amendments, modifications or corrections to either document. If any change materially affects a creditor's treatment, then that creditor will be entitled to reconsider its vote on the Plan and may submit a new ballot prior to confirmation. If the Court finds that no material disclosure or treatment of a creditor is affected by a change, then it may approve the modification without further vote. In any case, to the extent approved by the Court, modifications amendments or corrections to the Plan and/or the Disclosure Statement will be included either in the Confirmation Order or other order of the Court, and such approved items become part of and included into the relevant document without republication thereof. Creditors should therefore review relevant orders of the Court in addition to the Plan and Disclosure Statement in order to fully understand the terms and affect of those documents.

### D. Retention of jurisdiction

The Bankruptcy Court's jurisdiction shall be retained under the Plan for limited purposes including, claims objections, defaults under the Plan, adversary proceeding determination, and certain other limited matters.


## ARTICLE VI:
## ALTERNATIVES TO DEBTORS PLAN;
## RISKS AND LIQUIDATION ANALYSIS; TAX CONSIDERATIONS

### A. Alternatives; Liquidation analysis

If the Debtor's Plan is not confirmed, the Debtor may either seek to dismiss his case entirely, in which case all creditors would retain the rights against the Debtor that existed prior to the bankruptcy filing, or he may convert the case to one under Chapter 7 of the Code.  If the case is converted to Chapter 7, a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code.  Generally, a liquidation or forced sale yields a substantially lower amount. Further, the value of the non-exempt assets in this case would result in a much lower distribution than proposed in the Plan.  See the Liquidation Analysis at **Exhibit "D"**.

The Debtor owes monies to a taxing authority and to its Secured Creditors. The claims of secured creditors and the taxing authority would need to be paid prior to the unsecured creditors receiving any funds. Based upon the amount of the debt and the value of the Debtor's assets a liquidation of the Debtor's assets would not provide any funds for the unsecured creditors.

### B. Risks to Confirmation or Consummation

Claimants should be aware that there are a number of substantial risks involved in consummation of the Plan. The risk connected with this Plan is the Debtor's ability to continue his business activities and to sell or refinance his residence in order to make the payments to the creditors. The Plan contemplates that there will be excess funds to pay Creditor Claims, which may not occur if business income does not rise to the level expected. Further, Mr. Don has a significant contingent debt based on a bank note related to a prior real estate project that the Debtor has listed on amended schedules of debts.  The Debtor did no list the debt initially because he understands that his obligations thereunder were assumed by a co-maker on the note that now holds Mr. Don's former rights in the project.  Thus, while it is not likely that the claim would be asserted, and although subject to defenses and offsets, the total amount could be $2.5 million.  If the bank were to file a claim and it were to be allowed in the full amount, the result would be to dilute the percentage recovery to all unsecured creditors.  Thus, there is an inherent risk of the substantial decrease in the percentage treatment of unsecured claims.  In that case, the Debtor reserves the right to withdraw the Plan.

### C. *Tax Consequences*

Implementation of the Plan may result in federal income tax consequences to holders of Claims and to the Debtor. Tax consequences to a particular Creditor may depend on the particular circumstances or facts regarding the Claim of the Creditor. CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.

## ARTICLE VII:
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought in the nature of a recovery of assets paid or that may arise under the Bankruptcy Code. The Debtor does not believe any claims under the provision of the Bankruptcy Code exist which would be beneficial for the Debtor to pursue, except for the Wells Fargo adversary (described *infra)*. The Debtor may also have a claim against attorney Robert Holmes that his counsel is investigating related to actions or inaction in matters related to the Wells Fargo matters prior to the bankruptcy filing. Otherwise, there are no claims the Debtor is aware of which would provide a greater return to the creditors of the estate than is provided in the Plan.

## ARTICLE VIII:
## RECOMMENDATION

The Debtor has Believes that the Plan will provide creditors in the impaired classes with substantially better treatment than any alternative. The Debtor's intent is to leave creditors in nearly the same position that they would have been without the filing of the bankruptcy case. The Debtor actively seeks your vote to accept the Plan. Please refer to the instructions on the Ballot enclosed and in Section I of the Disclosure Statement for voting instructions.

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES VOTING CLAIMANTS WITH THE BEST OPPORTUNITY TO RECEIVE THE GREATEST AMOUNT WITH RESPECT TO THEIR CLAIMS. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE TIMELY TO "ACCEPT" THE PLAN.**

Dated: February 18, 2011.

Respectfully submitted,

*/S/ Lawrence C. Don*
Lawrence Charles Don, Debtor

**BLOCK & GARDEN, LLP**

*/S/ I. Richard Levy*
I. Richard Levy
State Bar No. 12265020
5459 Sherry Lane, Suite 900
Dallas, Texas 75225
Tel: (214) 866-0990
Fax: (214) 866-0991
*levy@bgvllp.com*

COUNSEL FOR THE DEBTOR IN POSSESSION

*EXHIBITS:*

Exhibit "A": Second Plan Of Reorganization For Lawrence Charles Don

Exhibit "B": Summary of Claims

Exhibit "C": Projections Related to the Second Plan Consummation

Exhibit "D": Liquidation Analysis and Distribution Analysis

# Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| **LAWRENCE CHARLES DON** | § | **Case No. 10-42622** |
| 700 Eagles Landing Blvd. | § | |
| Oak Point, Texas 75068 | § | **Chapter 11** (Small Business) |
| SSN: xxx-xx-7124 | § | |
| | § | |
| **Debtor** | § | |

## SECOND PLAN OF REORGANIZATION
## FOR LAWRENCE CHARLES DON

COMES NOW, LAWRENCE CHARLES DON ("Don"), Debtor and Debtor-in-Possession in the above-referenced bankruptcy case, and proposes the following Second Plan of Reorganization ("Plan").

## ARTICLE I:  DEFINITIONS

Unless the context otherwise requires, the following capitalized terms used in the Plan shall have the meanings indicated below, the definition of which are equally applicable to both the singular and plural form.  Undefined terms used this Plan that are defined in Section 101 of the Code or that refer to a "Section of the Code" shall have the meaning assigned in the Code.

1.1    "**Administrative Claim**" means those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

1.2    "**Allowed Claim**" as to any Claim or as to a Class consisting of Claims means a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date and as to which no unresolved objection exists, (b) a Claim subject to an objection that is allowed by Final Order of the Court, or (c) a Claim that arises from being scheduled in the list of creditors prepared by the Debtor and filed with the Court pursuant to Rule 1007(b), as may be amended, which is not denoted in the schedules as disputed, contingent or unliquidated, and as to which no objection to the allowance thereof has been interposed through closing of this case.

1.3    "**Allowed Secured Claim**" means a Secured Claim that is an Allowed Claim but only to the extent or portion of the value of the security or collateral or interest securing such Claim.  Any excess amount of a Secured Claim beyond the value of the lien, collateral or interest by which it is secured shall be treated as an Unsecured Claim as defined below and subject to 11 U.S.C. §506(a).

1.4    "**Allowed Unsecured Claim**" means an unsecured Claim against Debtor that is an Allowed Claim.

1.5    "**Available Cash**" means cash or its equivalents available to the Debtor to use to make payments set forth in the Plan at the relevant time or in the relevant period which funds are in

excess of (a) the actual and reasonable personal and business expenses of the Reorganized Debtor, (b) personal funds of the Reorganized Debtor's spouse which are not contributed towards the payments under the Plan escrow, (b) funds reasonably set aside in reserve to make future installment payments to a Class, and (c) sums set aside for treatment of Contested Claims upon their becoming Allowed Claims as provided for in the Plan or in any relevant order of the Court.

1.6 **"Bar Date"** means December 2, 2010 which was the date fixed by the Court as the last date for filing all Claims in this case other than Governmental, Administrative and Priority Claims or Rejection Claims, or such other later date set by the Court or Rules that may be applicable to a particular claim.

1.7 **"Case"** means this Chapter 11 case.

1.8 **"Claim"** shall have the meaning set forth in the Code and shall at a minimum mean the liability of the Debtor on a Debt or any right to payment from the Debtor as of the date of entry of the Order Confirming Plan, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

1.9 **"Claimant"** means the holder of a Claim.

1.10 **"Class"** shall refer to a category of holders of Claims or interests set forth below as provided for in Section 1122 of the Code.

1.11 **"Code"** means the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

1.12 **"Confirmation"** or **"Confirmation of this Plan"** means entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

1.13 **"Confirmation Date"** means the date on which the Court enters an Order confirming this Plan.

1.14 **"Court"** means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, presiding over these Chapter 11 reorganization cases, or any successor court of competent jurisdiction.

1.15 **"Creditor"** means any person having a Claim against Debtor.

1.16 **"Debt"** means any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

1.17 **"Debtor"** means Lawrence Charles Don, the Debtor in the above-styled and numbered case.

1.18 **"Disbursing Agent"** means the Reorganized Debtor.

1.19 **"Discharge"** means the discharge of the Debtor under the Code as described in sections of the Plan related to the effect of a chapter 11 discharge of the Debtor.

1.20 **"Disclosure Statement"** means the documents or materials prepared by the Debtor related to this Plan that are prepared under Section 1125 of the Code that accompany this Plan for use in the solicitation of votes from Claimants to accept or reject the Plan, and as amended or supplemented.

1.21    **"Effective Date"** means the business day immediately following the date upon which the Confirmation Order becomes a Final Order, but in no event later than 30 days after the Confirmation Date upon which the terms of the Plan shall take effect.

1.22    **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

1.23    **"Final Order"** means that date which is fourteen (14) days following the entry of an Order, during which period of time no notice of appeal affecting the Order is filed, or if a notice of appeal is filed, no stay of the effectiveness of the Order exists.

1.24    **"Impaired"** means with respect to a Class of Claimants that the Claimants in the Class that hold Allowed Claims are not paid in full or that their legal and equitable rights are not fully satisfied or treated under Sections 1123 and 1124 of the Code.  Only Classes that are impaired may vote to accept or reject the Plan.

1.25    **"Order Confirming Plan"** means the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation or filed for relief under Chapter 11 of the Code.

1.26    **"Petition Date"** means August 4, 2010, the date on which the Debtor filed this proceeding.

1.27    **"Plan"** means this Second Plan of Reorganization as it may be amended, modified or supplemented.

1.28    **"Priority Claim"** means any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

1.29    **"Rejection Claim"** means any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

1.30    **"Reorganized Debtor"** means Lawrence C. Don after the Confirmation Date and upon the revesting of the assets of the estate in him under Section 1141 of the Code.

1.31    **"Rule"** refers to the Federal Rules of Bankruptcy Procedure as they may be amended or supplemented, and any applicable Local Rule of Bankruptcy Procedure implemented by the Court.

1.32    **"Secured Claim"** means an Claim secured by a lien, security interest, or other encumbrance on any property owned by the Debtor qualifying under Section 506 of the Code, to the extent of the value of the property encumbered thereby.  Any portion of a Secured Claim exceeding the value of the security held therefore shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

1.33    **"Substantial Consummation"** shall occur upon Debtor's commencement of payments to creditors as provided in this Plan.

1.34    **"Tax Claims"** means any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

1.35    **"Unsecured Claim"** means any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE 2:  CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

2.1 **Claims and Debts**:  Various types of Claims and Debts are defined in this Plan.  This Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether or not contingent or liquidated and whether or not Allowed by the Court pursuant to Section 502(a) of the Code and all Claims and Debts will receive the treatment as described herein. Claims, debts or obligations incurred by the Debtor post-petition in the ordinary course of business or as living expenses, except as specifically set forth the Plan, will be paid by the Debtor according to their terms as they come due.

2.2 **Time for Filing Claims**: With respect to those Claims that have been identified in the Schedules which have been scheduled as "disputed," "contingent," or "unliquidated," said Claimants must have filed a proof of claim on or before the Bar Date to participate under this Plan. Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan unless they are Allowed Claims. Claims arising from rejection of a lease or executory contract, if any, shall be made prior to the time for objecting to confirmation of Debtor's Plan.  Administrative Claims shall be filed with the Court within thirty (30) days following approval of the Debtor's Plan.

2.3 **Modifications to Plan**: In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

2.4 **Small Business Plan**:  The Debtor's Case has been administered as a Small Business Case as defined in Section 101(51C) and (51D) of the Code.  Pursuant to those provisions, the Debtor has limitations on who may file a Plan and by when this Plan must be considered for confirmation by the Court (Section 1121(e), the timing and approval of a disclosure statement (Section 1125(f) and certain other matters.  The Debtor anticipates that will solicit votes on the Plan without obtaining formal approval of the Disclosure Statement by the Court prior to solicitation of votes to accept or reject the Plan.  In such case, he Debtor would seek the approval of the disclosures in the Disclosure Statement in conjunction with the confirmation hearings on the Plan.

## ARTICLE 3:  UNCLASSIFIED CLAIMS (CERTAIN ADMINISTRATIVE CLAIMS AND CERTAIN PRIORITY TAX CLAIMS)

3.1 Except as specifically provided herein as to a Class of Claims, all trade and service debts and obligations incurred in the normal course of business or as living expenses by the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business unless a different time for payment is specified in this Plan.

3.2 All regularly noticed and assessed ad valorem and property taxes, and franchise taxes, assessed upon the Debtor for the year 2011 and later will be paid at the time and as required by law. Such tax creditors shall not be considered Administrative Claims nor shall they be subject to discharge hereunder, unless otherwise ordered by the Court.

## ARTICLE 4:  DIVISION OF CREDITORS INTO CLASSES

4.1 **Classification of Claims**: Claimants holding similar claims have been grouped into

Classes in the Plan as required in the Code as follows:

<u>Class 1</u>:  Allowed Administrative Claims.
<u>Class 2</u>:  Allowed Priority and Secured Tax Creditor Claims.
<u>Class 3</u>:  Allowed Secured Claims.
<u>Class 4</u>:  Allowed Unsecured Claims.

4.2 **Impairment**: Classes 1 and 2 are not impaired.  Classes 3 and 4 are Impaired (except as set forth in subsection 5.3(b)).

## ARTICLE 5:  TREATMENT OF CLASSES

5.1 **<u>Class 1 Claimants</u> (Allowed Administrative Claims, Professionals and US Trustee)** will be paid in cash and in full on the Effective Date of this Plan, or as may be agreed to in writing between the Debtor and the Creditor.  Professional fees are subject to approval by the Court as reasonable. This case will not be closed until all allowed Administrative Claims are paid in full. The Debtor is required to continue to make quarterly payments to the U.S. Trustee and may be required to file post-confirmation operating reports until this case is closed.  All Administrative Claims must be filed within 30 days after the Order of Confirmation.  The Class 1 Claimants are not impaired under this Plan.

5.2 **<u>Class 2 Claimants</u> (Allowed Priority or Secured Tax Creditor Claims)** shall be paid in full satisfied as follows, except if the Creditor agrees to accept a longer payment term or less favorable treatment in writing: Each Allowed Priority or Secured Tax Creditor Claim shall be paid on the Effective Date from Available Cash, and if there is not sufficient Available Cash to pay all allowed Class 2 Claimants in full on the Effective Date, by way of monthly installments bearing a 6% per annum interest rate payable in equal monthly installments over six (6) months, with the first payment due on or within 5 days of the Effective Date and with all subsequent payments due on or before the 15th of the following month.  Class 2 Claimants are unimpaired under this Plan.

5.3 **<u>Class 3 Claimants</u> (Allowed Secured Claims)**

(a) With respect to the two Claims of Toyota Motor Credit secured by two vehicles owned by the Debtor, the Allowed Secured Claims shall be treated as follows:  (1) the Claimant will retain its lien or security interest in the specific vehicle collateral, (2) the Reorganized Debtor will maintain adequate amounts of casualty insurance coverage on each vehicle (until the date that payments set forth in subsection (3) are concluded); and (3) as to each particular Allowed Secured Claim, the Allowed Amount will be paid in full by means of twenty-four (24) equal monthly installments, which shall also include simple interest assessed at 6% interest per annum, with the first payment due on or within 5 days of the Effective Date and with all subsequent payments due on or before the 15th of the following month.  Toyota Motor Credit, or any assignee or successor, may not enforce any lien or right to, in, or against any specific vehicle or collateral securing the Claim unless (x) the Reorganized Debtor defaults in payment on such particular Allowed Secured Claim for two (2) successive months, and as to which payment default, the debtor does not cure within 10 days of a due date of a missed due date; (y) the Reorganized Debtor fails to provide evidence of insurance within 10 business days after receipt by the Reorganized Debtor of a written request from Toyota Motor Credit for same.

(b) With respect to a Claimant that may be found to have an Allowed Secured Claim on the residence of the Debtor, the Debtor has scheduled the claims as disputed and no proof of claim has been filed.  However, the Debtor intends to file an adversary proceeding seeking to determine the existence of, extent, validity and to determine the holder or owner of such a Secured Claim.  Subject to such proceeding and the results thereof, the Debtor proposes to treat the Allowed amount of the Secured Claim by the Claimant's retention of the lien securing the Claim to the extent of the amount of its allowance, and the payment of the Allowed Amount, if any, through one of the following means:

(1) Payment in full of the Allowed amount by means of equal monthly installments, including interest calculated at 5% per annum, over the remaining 27 years of the term of the loan, with the first payment to be made on the later of the Effective Date or the entry Final Order Allowing the Secured Claim; or

(2) Upon the occasion of a sale of the Debtor's residence or refinancing of the mortgage, in full in the amount of the Claimant's Allowed Secured Claim, to be paid on the later to occur of the closing of the sale or refinancing of the residence or a Final Order Allowing the Secured Claim.

Under all circumstances, the Allowed amount of the Secured Claim of the Claimant shall included any amounts asserted by the Claimant to be due for property taxes alleged to have ben paid by the Claimant, which shall be subject to defenses of the Debtor thereto.

All of the Class 3 Claimants are impaired under this Plan, except if the Debtor elects to treat the Secured Claimant on the Debtor's residence under option (2) above. In such case, the Debtor believes that the Claimant would be unimpaired.

5.4 **Class 4 Claimants (Allowed Unsecured Claims)** will be treated by payment in full of the amount Allowed Unsecured Claims through equal monthly installments over 24 consecutive months, with the first payment commencing as soon as possible after the Effective Date and with subsequent payments due on or before the 15th of the following month. Any and all such payments to Class 4 Claimants are subject to sufficient Available Cash. Notwithstanding the Available Cash requirement, the first installment payment hereunder must be made on or before six (6) months after the Effective Date of the Plan. If the Debtor is unable to commence payments due to Available Cash limitations as of the the expiration of 2 months from the Effective Date, the Debtor will notify Class 4 Creditors of the expected date upon which payments will commence. Class 4 Claimants are impaired under this Plan.

## ARTICLE 6: MEANS FOR EXECUTION OF THE PLAN

6.1 **Means for Making Payments**. The Debtor's payment obligations under this Plan described above will be satisfied from (1) business income of the Reorganized Debtor, including that income or license fees obtained from business ventures related to, license or royalty fees from or proceeds from the sale of the Reorganized Debtor's interest in or to patented technology described in the schedules and statements of the Debtor and/or (2) proceeds from the Debtor's and his spouse's substantial equity interest in their home realized either (a) by way of a sale of all or a portion of the property or (b) the refinancing or implementing a home equity loan on the property. The Debtor shall have a minimum of six (6) months in which to establish if business income will be sufficient to provide Available Cash to make payments to creditors without the addition or substitution of the sale or refinancing of his home.

6.2 **Manner & Time for Payments**. Debtor will make payments required under the Plan from Available Cash generated as discussed in 6.1 above. To the extent that Available Cash in any particular month is insufficient to meet all of the obligations of the under the Plan, then the Reorganized Debtor shall make such payments, or partial payments, from Available to Classes of Claims first to Allowed but unpaid Class 1 creditors, second to Allowed Class 2 Claims, third to Class 3 Claims and lastly to Class 4 Claims. The foregoing is subject to any agreement by a Claimant to be treated less favorably than other claims in a particular Class.

6.3 **Distributions; Returned, Unclaimed Funds**. Distributions and payments to be made under the Plan shall be made by the Reorganized Debtor by check or other equivalent means by US mail, first class addressed to the Claimant at the address noted on the Proof of Claim filed in the case, giving effect to the latest in time of any amendment thereto, or in the absence of a Proof of Claim, to the address noted by the Debtor in its schedules, or absent any other address, to the address set

forth in a notice of appearance by the creditor in the case. If no address is so noted, or if a payment or distribution is returned because of an invalid address or absence of the named Claimant, the Debtor shall take reasonable steps to research the location of such Claimant. If after such reasonable efforts, no valid address can be found, the Debtor shall hold such payment or distribution for the benefit of such Claimant for a period of six (6) months after the date of the payment, after such time the payment shall be deemed forfeited and shall be returned to funds calculated for Available Cash. In case of installment payments, the Debtor will hold the first two payments to an unknown Claimant whose distribution is returned or whose address is unknown for the six (6) month period, after which such funds will be returned to the Reorganized Debtor and no further distributions or reserve shall be forfeited and no further payments or reserve for such Claimant shall be required. The foregoing terms are provided, however, that if prior to the final distributions are made to Claimants in Classes 1, 2 and 4 of the Plan, a missing claimant appears and the Court after notice and hearing determines that the Claimant did not have notice of the Confirmation of the Plan, the Court may make such provision regarding the treatment of such Creditor that is consistent with the treatment of the Class and Claim of the Claimant that is an Allowed Claim.

6.3 **Time for Actions**. Any actions required to be taken by the Debtor on the Effective Date may be taken by the Debtor before the Effective Date or immediately following the date the Confirmation Order becomes a Final Order.

6.4 **Contested Claims and Claims Reserve**. The Reorganized Debtor shall reserve amounts that would be paid to a Contested Claim under the Plan based on the lesser of the (a) amount of a Proof of Claim filed by the Claimant, (b) the amount scheduled by the Debtor as to a Contested Claim for which no proof of claim has been filed, or (c) the amount specified in a relevant order of the Court. The Claims Reserve shall be held in a separate account from other Available Cash or funds of the Reorganized Debtor. After the entry of a Final Order allowing, disallowing or allowing in part of the Contested Claim, the Reorganized Debtor will make payment of sums reserved to such Claimant based on the amount of the Allowed Claim resolved by Final Order as if payments were made under the Plan as of that date to that Claimant in the Allowed amount; provided that (y) if the amount of the Contested Claim is Allowed in an amount which is *less* than the amount reserved, the remainder of the funds may be released to the Reorganized Debtor and shall be made part of the funds to be included in the calculation of Available Cash and (z) if the amount of the Contested Claim is Allowed in an amount *greater* than the reserved amount, the Debtor shall have a minimum of three (3) months in which to cure amounts that would otherwise need to be paid to the Claimant under the Plan.

6.5 **Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims pursuant to the Plan shall be in full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor subject to the provisions herein. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.

## ARTICLE 7: SECTION 1129(b)(2)

7.1 The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code. Accordingly, Debtor, as the plan proponent shall request the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to any rejecting Class or Claim.

_____

## ARTICLE 8:  EVENTS OF DEFAULT AND EFFECT THEREOF

8.1  In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 60 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtor.

8.2  No Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtor, except as specifically set forth in the treatment of a specific Class or Claims.

8.3  Specific terms set forth in the provisions of Article 5 regarding the treatment of a specific claim or Class and making different terms for the determination of a default shall control over the general terms set forth in this Article.

## ARTICLE 9:  DISCHARGE

9.1  Effective as of the Confirmation Date, Claims or Debts against the Debtor, whether or specifically provided for by the Plan, shall be deemed released and satisfied.  Claims or Debts for which no treatment is set forth in the Plan are likewise bound by the terms hereof and the release and discharge provisions of the Plan so long as they have received sufficient notice of these proceedings as such may be determined by the Court upon notice and hearing.

9.2  The Debtor shall be discharged from liability or obligation on all Claims or Debts to the full extent provided in the Code, including Sections 524(a) and Section 1141(d) of the Code subject to the limitations and provision concerning an individual debtor set forth in Section 1141(d) of the Code.  The Debtor intends to request the Court enter an order of discharge under Section 1141(d)(5) of the Code at anytime after the completion of payments to Class 1, 2 and 4 creditors.  Notwithstanding anything to the contrary, the Debtor or Reorganized Debtor may seek such Discharge Order at any time or under any terms consistent with the Code, Rules, or in equity as the Court may Order.

9.3  Prior to the entry of a Final Order of Discharge, the entry of the Confirmation Order shall act as an injunction against the commencement, continuance or taking of any action against the Debtor, Reorganized Debtor or the property of the estate as revested in the Reorganized Debtor or otherwise, that would be contrary to the effect that the Debtor was duly and finally discharged from any Debt or Claim arising before the Petition Date or prior to the Confirmation Order, except as specifically provided in Article 3 and section 5.3(a) of this Plan.

9.2  If the Court revokes the Confirmation Order before an Order of Discharge is entered, then the discharge provisions of this Article shall become null and void as and on the date that such order of revocation becomes a Final Order.

## ARTICLE 10:  AMENDMENTS TO THE PLAN

10.1  Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of the Code.  The Plan as modified becomes the Plan if circumstances warrant modification and the Court approves of such modifications.

10.2  In the event of modification of this Plan pursuant to Section 11.1, any holder of a Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within ten (10) days of service of the Plan modifications

upon such holder, such holder changes its previous acceptance or rejection, unless the Court finds in the relevant order related to the modification that the modification does not adversely affect the treatment of any Claim or Class, or portion thereof.

## ARTICLE 11:  EFFECT OF CONFIRMATION

11.1  Upon Confirmation, the provisions of this Plan bind any and all of the Debtor, Reorganized Debtor and any Claimant, Creditor, or other party in interest whether or not the Debt or Claim of such Claimant or Creditor is impaired under the Plan and whether or not such Claimant or Creditor has accepted or rejected this Plan, or has been deemed to accept or reject the Plan.

11.2  All property of the estate is re-vested in the Reorganized Debtor as provided in the Code.

11.3  All property of the Reorganized Debtor shall be held free and clear of all Debts, Claims and interests of Claimants or Creditors, except as to claims, secured claims and interests specifically granted in this Plan, and as liens or interests of holders of Allowed Secured Claims that are specifically set forth herein.

## ARTICLE 12:  MISCELLANEOUS PROVISIONS

12.1  The obligations under this Plan to any particular Claim shall be determined in reference to the laws of the State determined by the Court to be applicable, and in the absence of same, by the laws of the State of Texas, giving effect to the conflicts of laws as determined by reference to the law of the State of Texas and another applicable precedent binding on the Court.

12.2  Captions are meant for reference purposes only, and shall not be binding as to nor determinative of the construction of the Plan.

## ARTICLE 13:  RETENTION OF JURISDICTION

Until this case is closed, the Court retains jurisdiction of the following matters only:

13.1  To direct any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect the provisions of the Plan as to property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

13.2  To liquidate or estimate Claims in connection with any Contested Claims; to allow or disallow Claims; and to adjudicate objections to Claims and/or adversary proceedings concerning allowance or disallowance of Claims; to determine the existence, party entitled to assert, and the validity, extent and priority of all attachments, liens, set offs, constructive trust claims and any other security interest allowed or asserted against property of Debtor's estate as property as revested in the Reorganized Debtor.

13.3  To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in Debtor's estate and to consummate rejection and termination thereof in connection with Debtor's estate and/or implementation of the Plan.

13.4  To adjudicate all Claims to an ownership interest in any property of Debtor's estate.

13.5  To consider matter concerning discharge of the Debtor whether as set forth in the Code or the Plan.

13.6     To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

13.7     To hear and determine any action or proceeding brought by Debtor or the Reorganized Debtor under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date; To recover all assets and properties, including by lawsuit, of Debtor's estate wherever located and to entertain relief related thereto by way of motion practice or adversary proceeding.

13.8     To hear and determine any other core proceeding, whether such proceeding is brought before or after the Effective Date so long as it is brought prior to closing of the case, or if afterwards, if the case is reopened for such purposed after notice and hearing.

13.9     To consider any modification of this Plan under Section 1127 of the Code.

13.10    To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

13.11    To hear and determine Reorganized Debtor's requests for orders as are consistent with this Plan as may be necessary or desirable to carry out the provisions thereof.

13.12    To enter an order closing this case.

Dated: January 31, 2011.

Respectfully submitted,


_____/S/ Lawrence C. Don_____
Lawrence Charles Don, Debtor


**BLOCK & GARDEN, LLP**

_____/S/ I. Richard Levy_____
I. Richard Levy
State Bar No. 12265020
5459 Sherry Lane, Suite 900
Dallas, Texas 75225
Tel: (214) 866-0990
Fax: (214) 866-0991
*levy@bgvllp.com*

COUNSEL FOR THE DEBTOR IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| **LAWRENCE CHARLES DON** | § | **Case No. 10-42622** |
| 700 Eagles Landing Blvd. | § | |
| Oak Point, Texas 75068 | § | **Chapter 11** (Small Business) |
| SSN:  xxx-xx-7124 | § | |
| | § | |
| **Debtor** | § | |

### [PROPOSED] SECOND PLAN OF REORGANIZATION
### FOR LAWRENCE CHARLES DON

**TO:    ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

**PLEASE TAKE NOTICE THAT THE [PROPOSED] SECOND PLAN IS BEING PROPOSED UNDER THE CHAPTER 11 PROVISIONS OF THE BANKRUPTCY CODE RELATED TO SMALL BUSINESS CASES.  THE PLAN IS NOT PRESENTLY ACCOMPANIED BY A DISCLOSURE STATEMENT, WHICH THE DEBTOR EXPECTS TO COMPLETE AND FILE OF RECORD WITHIN APPROXIMATELY TEN (10) DAYS OF THE DATE OF THIS FILING.  THIS PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT IN ANY MANNER, AND NO SOLICITATION OF ANY VOTE ON THE PLAN IS SOUGHT ABSENT THE FILING AND DISSEMINATION OF A DISCLOSURE STATEMENT. THE DEBTOR RESERVES THE RIGHT TO AMEND, SUPPLEMENT, SUBSTITUTE OR WITHDRAW THIS PLAN AT ANY TIME PRIOR TO CONSIDERATION BY THE COURT OF CONFIRMATION HEREOF.**

COMES NOW, LAWRENCE CHARLES DON ("Don"), Debtor and Debtor-in-Possession in the above-referenced bankruptcy case, and proposes the following Second Plan of Reorganization ("Plan").

### <u>ARTICLE I:  DEFINITIONS</u>

Unless the context otherwise requires, the following capitalized terms used in the Plan shall have the meanings indicated below, the definition of which are equally applicable to both the singular and plural form.  Undefined terms used this Plan that are defined in Section 101 of the Code or that refer to a "Section of the Code" shall have the meaning assigned in the Code.

1.1 "**Administrative Claim**" means those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

1.2 "**Allowed Claim**" as to any Claim or as to a Class consisting of Claims means a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date and as to which no unresolved objection exists, (b) a Claim subject to an objection that is allowed by Final Order of the Court, or (c) a Claim that arises from being scheduled in the list of creditors prepared by the Debtor and filed with the Court pursuant to Rule 1007(b), as may be amended, which is not denoted in the schedules as disputed, contingent or unliquidated, and as to which no objection to the allowance thereof has been interposed through closing of this case.

1.3 "**Allowed Secured Claim**" means a Secured Claim that is an Allowed Claim but only to the extent or portion of the value of the security or collateral or interest securing such Claim.  Any excess amount of a Secured Claim beyond the value of the lien, collateral or interest by which it is secured shall be treated as an Unsecured Claim as defined below and subject to 11 U.S.C. §506(a).

1.4 "**Allowed Unsecured Claim**" means an unsecured Claim against Debtor that is an Allowed Claim.

1.5 "**Available Cash**" means cash or its equivalents available to the Debtor to use to make payments set forth in the Plan at the relevant time or in the relevant period which funds are in excess of (a) the actual and reasonable personal and business expenses of the Reorganized Debtor, (b) personal funds of the Reorganized Debtor's spouse which are not contributed towards the payments under the Plan escrow, (b) funds reasonably set aside in reserve to make future installment payments to a Class, and (c) sums set aside for treatment of Contested Claims upon their becoming Allowed Claims as provided for in the Plan or in any relevant order of the Court.

1.6 "**Bar Date**" means December 2, 2010 which was the date fixed by the Court as the last date for filing all Claims in this case other than Governmental, Administrative and Priority Claims or Rejection Claims, or such other later date set by the Court or Rules that may be applicable to a particular claim.

1.7 "**Case**" means this Chapter 11 case.

1.8 "**Claim**" shall have the meaning set forth in the Code and shall at a minimum mean the liability of the Debtor on a Debt or any right to payment from the Debtor as of the date of entry of the Order Confirming Plan, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off.  Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

1.9 "**Claimant**" means the holder of a Claim.

1.10 "**Class**" shall refer to a category of holders of Claims or interests set forth

below as provided for in Section 1122 of the Code.

1.11 "**Code**" means the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

1.12 "**Confirmation**" or "**Confirmation of this Plan**" means entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

1.13 "**Confirmation Date**" means the date on which the Court enters an Order confirming this Plan.

1.14 "**Court**" means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, presiding over these Chapter 11 reorganization cases, or any successor court of competent jurisdiction.

1.15 "**Creditor**" means any person having a Claim against Debtor.

1.16 "**Debt**" means any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

1.17 "**Debtor**" means Lawrence Charles Don, the Debtor in the above-styled and numbered case.

1.18 "**Disbursing Agent**" means the Reorganized Debtor.

1.19 **"Discharge"** means the discharge of the Debtor under the Code as described in sections of the Plan related to the effect of a chapter 11 discharge of the Debtor.

1.20 **"Disclosure Statement"** means the documents or materials prepared by the Debtor related to this Plan that are prepared under Section 1125 of the Code that accompany this Plan for use in the solicitation of votes from Claimants to accept or reject the Plan, and as amended or supplemented.

1.21 "**Effective Date**" means the business day immediately following the date upon which the Confirmation Order becomes a Final Order, but in no event later than 30 days after the Confirmation Date upon which the terms of the Plan shall take effect.

1.22 "**Entity**" shall include Person, estate trust, governmental unit and the United States Trustee.

1.23 "**Final Order**" means that date which is fourteen (14) days following the entry of an Order, during which period of time no notice of appeal affecting the Order is filed, or if a notice of appeal is filed, no stay of the effectiveness of the Order exists.

1.24 **"Impaired"** means with respect to a Class of Claimants that the Claimants in the Class that hold Allowed Claims are not paid in full or that their legal and equitable rights are not fully satisfied or treated under Sections 1123 and 1124 of the Code. Only Classes that are impaired may vote to accept or reject the Plan.

1.25 "**Order Confirming Plan**" means the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation or filed for relief under Chapter 11 of the Code.

1.26 "**Petition Date**" means August 4, 2010, the date on which the Debtor filed this proceeding.

1.27 "**Plan**" means this Second Plan of Reorganization as it may be amended, modified or supplemented.

1.28 "**Priority Claim**" means any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

1.29 "**Rejection Claim**" means any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

1.30 "**Reorganized Debtor**" means Lawrence C. Don after the Confirmation Date and upon the revesting of the assets of the estate in him under Section 1141 of the Code.

1.31 **"Rule"** refers to the Federal Rules of Bankruptcy Procedure as they may be amended or supplemented, and any applicable Local Rule of Bankruptcy Procedure implemented by the Court.

1.32 "**Secured Claim**" means an Claim secured by a lien, security interest, or other encumbrance on any property owned by the Debtor qualifying under Section 506 of the Code, to the extent of the value of the property encumbered thereby. Any portion of a Secured Claim exceeding the value of the security held therefore shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

1.33 "**Substantial Consummation**" shall occur upon Debtor's commencement of payments to creditors as provided in this Plan.

1.34 "**Tax Claims**" means any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

1.35 "**Unsecured Claim**" means any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## <u>ARTICLE 2: CERTAIN GENERAL TERMS AND CONDITIONS</u>

The following general terms and conditions apply to this Plan:

2.1 **<u>Claims and Debts</u>**: Various types of Claims and Debts are defined in this Plan. This Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether or not contingent or liquidated and whether or not Allowed

by the Court pursuant to Section 502(a) of the Code and all Claims and Debts will receive the treatment as described herein. Claims, debts or obligations incurred by the Debtor post-petition in the ordinary course of business or as living expenses, except as specifically set forth the Plan, will be paid by the Debtor according to their terms as they come due.

2.2 **Time for Filing Claims**: With respect to those Claims that have been identified in the Schedules which have been scheduled as "disputed," "contingent," or "unliquidated," said Claimants <u>must</u> have filed a proof of claim on or before the Bar Date to participate under this Plan. Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan unless they are Allowed Claims. Claims arising from rejection of a lease or executory contract, if any, shall be made prior to the time for objecting to confirmation of Debtor's Plan. Administrative Claims shall be filed with the Court within thirty (30) days following approval of the Debtor's Plan.

2.3 **Modifications to Plan**: In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

2.4 **Small Business Plan**: The Debtor's Case has been administered as a Small Business Case as defined in Section 101(51C) and (51D) of the Code. Pursuant to those provisions, the Debtor has limitations on who may file a Plan and by when this Plan must be considered for confirmation by the Court (Section 1121(e), the timing and approval of a disclosure statement (Section 1125(f) and certain other matters. The Debtor anticipates that will solicit votes on the Plan without obtaining formal approval of the Disclosure Statement by the Court prior to solicitation of votes to accept or reject the Plan. In such case, he Debtor would seek the approval of the disclosures in the Disclosure Statement in conjunction with the confirmation hearings on the Plan.

## ARTICLE 3: UNCLASSIFIED CLAIMS (CERTAIN ADMINISTRATIVE CLAIMS AND CERTAIN PRIORITY TAX CLAIMS)

3.1 Except as specifically provided herein as to a Class of Claims, all trade and service debts and obligations incurred in the normal course of business or as living expenses by the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business unless a different time for payment is specified in this Plan.

3.2 All regularly noticed and assessed ad valorem and property taxes, and franchise taxes, assessed upon the Debtor for the year 2011 and later will be paid at the time and as required by law. Such tax creditors shall not be considered Administrative Claims nor shall they be subject to discharge hereunder, unless otherwise ordered by the Court.

## ARTICLE 4:  DIVISION OF CREDITORS INTO CLASSES

4.1 **Classification of Claims**: Claimants holding similar claims have been grouped into Classes in the Plan as required in the Code as follows:

<u>Class 1</u>:  Allowed Administrative Claims.
<u>Class 2</u>:  Allowed Priority and Secured Tax Creditor Claims.
<u>Class 3</u>:  Allowed Secured Claims.
<u>Class 4</u>:  Allowed Unsecured Claims.

4.2 **Impairment**: Classes 1 and 2 are not impaired.  Classes 3 and 4 are Impaired (except as set forth in subsection 5.3(b)).

## ARTICLE 5:  TREATMENT OF CLASSES

5.1 **Class 1 Claimants (Allowed Administrative Claims, Professionals and US Trustee)** will be paid in cash and in full on the Effective Date of this Plan, or as may be agreed to in writing between the Debtor and the Creditor.  Professional fees are subject to approval by the Court as reasonable. This case will not be closed until all allowed Administrative Claims are paid in full. The Debtor is required to continue to make quarterly payments to the U.S. Trustee and may be required to file post-confirmation operating reports until this case is closed.  All Administrative Claims must be filed within 30 days after the Order of Confirmation.  The Class 1 Claimants are not impaired under this Plan.

5.2 **Class 2 Claimants (Allowed Priority or Secured Tax Creditor Claims)** shall be paid in full satisfied as follows, except if the Creditor agrees to accept a longer payment term or less favorable treatment in writing: Each Allowed Priority or Secured Tax Creditor Claim shall be paid on the Effective Date from Available Cash, and if there is not sufficient Available Cash to pay all allowed Class 2 Claimants in full on the Effective Date, by way of monthly installments bearing a 6% per annum interest rate payable in equal monthly installments over six (6) months, with the first payment due on or within 5 days of the Effective Date and with all subsequent payments due on or before the 15th of the following month.  Class 2 Claimants are unimpaired under this Plan.

5.3 **Class 3 Claimants (Allowed Secured Claims)**

(a) With respect to the two Claims of Toyota Motor Credit secured by two vehicles owned by the Debtor, the Allowed Secured Claims shall be treated as follows: (1) the Claimant will retain its lien or security interest in the specific vehicle collateral, (2) the Reorganized Debtor will maintain adequate amounts of casualty insurance coverage on each vehicle (until the date that payments set forth in subsection (3) are concluded); and (3) as to each particular Allowed Secured Claim, the Allowed Amount will be paid in full by means of twenty-four (24) equal monthly installments, which shall also include simple interest assessed at 6% interest per annum, with the first payment due on or within 5 days of the Effective Date and with all subsequent payments due on or before

the 15th of the following month.  Toyota Motor Credit, or any assignee or successor, may not enforce any lien or right to, in, or against any specific vehicle or collateral securing the Claim unless (x) the Reorganized Debtor defaults in payment on such particular Allowed Secured Claim for two (2) successive months, and as to which payment default, the debtor does not cure within 10 days of a due date of a missed due date; (y) the Reorganized Debtor fails to provide evidence of insurance within 10 business days after receipt by the Reorganized Debtor of a written request from Toyota Motor Credit for same.

(b) With respect to a Claimant that may be found to have an Allowed Secured Claim on the residence of the Debtor, the Debtor has scheduled the claims as disputed and no proof of claim has been filed.  However, the Debtor intends to file an adversary proceeding seeking to determine the existence of, extent, validity and to determine the holder or owner of such a Secured Claim.  Subject to such proceeding and the results thereof, the Debtor proposes to treat the Allowed amount of the Secured Claim by the Claimant's retention of the lien securing the Claim to the extent of the amount of its allowance, and the payment of the Allowed Amount, if any, through one of the following means:

(1) Payment in full of the Allowed amount by means of equal monthly installments, including interest calculated at 5% per annum, over the remaining 27 years of the term of the loan, with the first payment to be made on the later of the Effective Date or the entry Final Order Allowing the Secured Claim; or

(2) Upon the occasion of a sale of the Debtor's residence or refinancing of the mortgage, in full in the amount of the Claimant's Allowed Secured Claim, to be paid on the later to occur of the closing of the sale or refinancing of the residence or a Final Order Allowing the Secured Claim.

Under all circumstances, the Allowed amount of the Secured Claim of the Claimant shall included any amounts asserted by the Claimant to be due for property taxes alleged to have ben paid by the Claimant, which shall be subject to defenses of the Debtor thereto.

All of the Class 3 Claimants are impaired under this Plan, except if the Debtor elects to treat the Secured Claimant on the Debtor's residence under option (2) above.  In such case, the Debtor believes that the Claimant would be unimpaired.

5.4 **Class 4 Claimants (Allowed Unsecured Claims)** will be treated by payment in full of the amount Allowed Unsecured Claims through equal monthly installments over 24 consecutive months, with the first payment commencing as soon as possible after the Effective Date and with subsequent payments due on or before the 15th of the following month. Any and all such payments to Class 4 Claimants are subject to sufficient Available Cash. Notwithstanding the Available Cash requirement, the first installment payment hereunder must be made on or before six (6) months after the Effective Date of the Plan.  If the Debtor is unable to commence payments due to Available Cash limitations as of the the expiration of 2 months from the Effective Date, the Debtor will notify Class 4 Creditors of the expected date upon which payments will commence.  Class 4 Claimants are impaired under this Plan.

## ARTICLE 6:  MEANS FOR EXECUTION OF THE PLAN

6.1 **Means for Making Payments**. The Debtor's payment obligations under this Plan described above will be satisfied from (1) business income of the Reorganized Debtor, including that income or license fees obtained from business ventures related to, license or royalty fees from or proceeds from the sale of the Reorganized Debtor's interest in or to patented technology described in the schedules and statements of the Debtor and/or (2) proceeds from the Debtor's and his spouse's substantial equity interest in their home realized either (a) by way of a sale of all or a portion of the property or (b) the refinancing or implementing a home equity loan on the property.  The Debtor shall have a minimum of six (6) months in which to establish if business income will be sufficient to provide Available Cash to make payments to creditors without the addition or substitution of the sale or refinancing of his home.

6.2 **Manner & Time for Payments**.  Debtor will make payments required under the Plan from Available Cash generated as discussed in 6.1 above.  To the extent that Available Cash in any particular month is insufficient to meet all of the obligations of the under the Plan, then the Reorganized Debtor shall make such payments, or partial payments, from Available to Classes of Claims first to Allowed but unpaid Class 1 creditors, second to Allowed Class 2 Claims, third to Class 3 Claims and lastly to Class 4 Claims.  The foregoing is subject to any agreement by a Claimant to be treated less favorably than other claims in a particular Class.

6.3 **Distributions; Returned, Unclaimed Funds**.  Distributions and payments to be made under the Plan shall be made by the Reorganized Debtor by check or other equivalent means by US mail, first class addressed to the Claimant at the address noted on the Proof of Claim filed in the case, giving effect to the latest in time of any amendment thereto, or in the absence of a Proof of Claim, to the address noted by the Debtor in its schedules, or absent any other address, to the address set forth in a notice of appearance by the creditor in the case.  If no address is so noted, or if a payment or distribution is returned because of an invalid address or absence of the named Claimant, the Debtor shall take reasonable steps to research the location of such Claimant.  If after such reasonable efforts, no valid address can be found, the Debtor shall hold such payment or distribution for the benefit of such Claimant for a period of six (6) months after the date of the payment, after such time the payment shall be deemed forfeited and shall be returned to funds calculated for Available Cash.  In case of installment payments, the Debtor will hold the first two payments to an unknown Claimant whose distribution is returned or whose address is unknown for the six (6) month period, after which such funds will be returned to the Reorganized Debtor and no further distributions or reserve shall be forfeited and no further payments or reserve for such Claimant shall be required.  The foregoing terms are provided, however, that if prior to the final distributions are made to Claimants in Classes 1, 2 and 4 of the Plan, a missing claimant appears and the Court after notice and hearing determines that the Claimant did not have notice of the Confirmation of the Plan, the Court may make such provision regarding the treatment of such Creditor that is consistent with the treatment of the Class and Claim of the Claimant that is an Allowed Claim.

6.3 **Time for Actions**.  Any actions required to be taken by the Debtor on the Effective Date may be taken by the Debtor before the Effective Date or immediately following the date the Confirmation Order becomes a Final Order.

6.4 **Contested Claims and Claims Reserve**.  The Reorganized Debtor shall reserve amounts that would be paid to a Contested Claim under the Plan based on the lesser of the (a) amount of a Proof of Claim filed by the Claimant, (b) the amount scheduled by the Debtor as to a Contested Claim for which no proof of claim has been filed, or (c) the amount specified in a relevant order of the Court.  The Claims Reserve shall be held in a separate account from other Available Cash or funds of the Reorganized Debtor.  After the entry of a Final Order allowing, disallowing or allowing in part of the Contested Claim, the Reorganized Debtor will make payment of sums reserved to such Claimant based on the amount of the Allowed Claim resolved by Final Order as if payments were made under the Plan as of that date to that Claimant in the Allowed amount; provided that (y) if the amount of the Contested Claim is Allowed in an amount which is *less* than the amount reserved, the remainder of the funds may be released to the Reorganized Debtor and shall be made part of the funds to be included in the calculation of Available Cash and (z) if the amount of the Contested Claim is Allowed in an amount *greater* than the reserved amount, the Debtor shall have a minimum of three (3) months in which to cure amounts that would otherwise need to be paid to the Claimant under the Plan.

6.5 **Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims pursuant to the Plan shall be in full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor subject to the provisions herein.  On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.

## ARTICLE 7:  SECTION 1129(b)(2)

7.1  The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.   Accordingly, Debtor, as the plan proponent shall request the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to any rejecting Class or Claim.

## ARTICLE 8:  EVENTS OF DEFAULT AND EFFECT THEREOF

8.1  In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 60 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtor.

8.2  No Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of

receipt of written notice of such default to Reorganized Debtor, except as specifically set forth in the treatment of a specific Class or Claims.

8.3  Specific terms set forth in the provisions of Article 5 regarding the treatment of a specific claim or Class and making different terms for the determination of a default shall control over the general terms set forth in this Article.

## ARTICLE 9:  DISCHARGE

9.1 Effective as of the Confirmation Date, Claims or Debts against the Debtor, whether or specifically provided for by the Plan, shall be deemed released and satisfied. Claims or Debts for which no treatment is set forth in the Plan are likewise bound by the terms hereof and the release and discharge provisions of the Plan so long as they have received sufficient notice of these proceedings as such may be determined by the Court upon notice and hearing.

9.2  The Debtor shall be discharged from liability or obligation on all Claims or Debts to the full extent provided in the Code, including Sections 524(a) and Section 1141(d) of the Code subject to the limitations and provision concerning an individual debtor set forth in Section 1141(d) of the Code.  The Debtor intends to request the Court enter an order of discharge under Section 1141(d)(5) of the Code at anytime after the completion of payments to Class 1, 2 and 4 creditors.  Notwithstanding anything to the contrary, the Debtor or Reorganized Debtor may seek such Discharge Order at any time or under any terms consistent with the Code, Rules, or in equity as the Court may Order.

9.3  Prior to the entry of a Final Order of Discharge, the entry of the Confirmation Order shall act as an injunction against the commencement, continuance or taking of any action against the Debtor, Reorganized Debtor or the property of the estate as revested in the Reorganized Debtor or otherwise, that would be contrary to the effect that the Debtor was duly and finally discharged from any Debt or Claim arising before the Petition Date or prior to the Confirmation Order, except as specifically provided in Article 3 and section 5.3(a) of this Plan.

9.2  If the Court revokes the Confirmation Order before an Order of Discharge is entered, then the discharge provisions of this Article shall become null and void as and on the date that such order of revocation becomes a Final Order.

## ARTICLE 10:  AMENDMENTS TO THE PLAN

10.1  Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of the Code.  The Plan as modified becomes the Plan if circumstances warrant modification and the Court approves of such modifications.

10.2  In the event of modification of this Plan pursuant to Section 11.1, any

holder of a Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within ten (10) days of service of the Plan modifications upon such holder, such holder changes its previous acceptance or rejection, unless the Court finds in the relevant order related to the modification that the modification does not adversely affect the treatment of any Claim or Class, or portion thereof.

## ARTICLE 11:  EFFECT OF CONFIRMATION

11.1 Upon Confirmation, the provisions of this Plan bind any and all of the Debtor, Reorganized Debtor and any Claimant, Creditor, or other party in interest whether or not the Debt or Claim of such Claimant or Creditor is impaired under the Plan and whether or not such Claimant or Creditor has accepted or rejected this Plan, or has been deemed to accept or reject the Plan.

11.2 All property of the estate is re-vested in the Reorganized Debtor as provided in the Code.

11.3 All property of the Reorganized Debtor shall be held free and clear of all Debts, Claims and interests of Claimants or Creditors, except as to claims, secured claims and interests specifically granted in this Plan, and as liens or interests of holders of Allowed Secured Claims that are specifically set forth herein.

## ARTICLE 12:  MISCELLANEOUS PROVISIONS

12.1 The obligations under this Plan to any particular Claim shall be determined in reference to the laws of the State determined by the Court to be applicable, and in the absence of same, by the laws of the State of Texas, giving effect to the conflicts of laws as determined by reference to the law of the State of Texas and another applicable precedent binding on the Court.

12.2  Captions are meant for reference purposes only, and shall not be binding as to nor determinative of the construction of the Plan.

## ARTICLE 13:  RETENTION OF JURISDICTION

Until this case is closed, the Court retains jurisdiction of the following matters only:

13.1      To direct any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect the provisions of the Plan as to property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

13.2      To liquidate or estimate Claims in connection with any Contested Claims; to allow or disallow Claims; and to adjudicate objections to Claims and/or adversary proceedings concerning allowance or disallowance of Claims; to determine the

existence, party entitled to assert, and the validity, extent and priority of all attachments, liens, set offs, constructive trust claims and any other security interest allowed or asserted against property of Debtor's estate as property as revested in the Reorganized Debtor.

13.3    To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in Debtor's estate and to consummate rejection and termination thereof in connection with Debtor's estate and/or implementation of the Plan.

13.4    To adjudicate all Claims to an ownership interest in any property of Debtor's estate.

13.5    To consider matter concerning discharge of the Debtor whether as set forth in the Code or the Plan.

13.6    To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

13.7    To hear and determine any action or proceeding brought by Debtor or the Reorganized Debtor under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date; To recover all assets and properties, including by lawsuit, of Debtor's estate wherever located and to entertain relief related thereto by way of motion practice or adversary proceeding.

13.8    To hear and determine any other core proceeding, whether such proceeding is brought before or after the Effective Date so long as it is brought prior to closing of the case, or if afterwards, if the case is reopened for such purposed after notice and hearing.

13.9    To consider any modification of this Plan under Section 1127 of the Code.

13.10    To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

13.11    To hear and determine Reorganized Debtor's requests for orders as are consistent with this Plan as may be necessary or desirable to carry out the provisions thereof.

13.12    To enter an order closing this case.

Dated: January 31, 2011.

Respectfully submitted,


_____/s/ Lawrence C. Don_____
Lawrence Charles Don, Debtor

**I. Richard Levy, P.C.**

/s/ I. Richard Levy
I. Richard Levy
State Bar No. 12265020
P.O. Box 796935
Dallas, Texas 75379
Tel: (214) 438-3753
Fax: (214) 242-3754
COUNSEL FOR THE DEBTOR IN POSSESSION

# Exhibit B

**Creditor Analysis**
**Exhibit "B" to Disclosure Statement**

| Type | Name | Claim Filed? | Claim No. | Amount | Object? |
|------|------|--------------|-----------|--------|---------|
| Secured Claims: | | | | | |
| | Toyota Motor Credit | Y | 4 | $ 8,603 | N |
| | Toyota Motor Credit | Y | 5 | $ 10,277 | N |
| | | | | $ 18,880 | |
| | Wells Fargo/ASC | N | - | $ 485,471 | Y |
| | | | | | |
| | | | | | |
| Unsecured creditors: | | | | | |
| | American Express FSB | Y | 8 | $ 1,716 | N |
| | American Express FSB | Y | 9 | $ 6,464 | N |
| | FIA Card Services (fka Bank of America; MBNA) | Y | 11 | $ 14,753 | N |
| | Bank of America | N | - | $ 12,664 | N |
| | Roundup Funding, LLC (fka Capital One) | Y | 1; 7 | $ 5,255 | N |
| | Candica LLC (fka Capital One) | Y | 2 | $ 8,037 | N |
| | Citi Card | N | - | $ 567 | N |
| | Chase Bank, USA | Y | 6 | $ 11,233 | N |
| | Denton Hospital | N | - | $ 2,170 | N |
| | Friedman & Feiger | Y | 10 | $ 5,093 | N |
| | Lexus Financial | N | - | $ 11,533 | N |
| | Viewtech Structural | Y | 3 | $ 13,220 | N |
| | | | | $ 92,705 | |
| Contingent (disputed & assumed by former partner) | | | | | |
| | Stillwater Nat'l Bank | N | - | $ 2,500,000 | Y |

# Exhibit C

| | | Expense Budget (Form B6J) | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income (net of taxes): | | | | | | | | | | | | |
| Debtor | | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | |
| Spouse | | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | |
| Equity Loan | | | | | | | | | | | |
| Interest | | | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | |
| Total Average Income | | | 10,540 | 10,540 | 10,540 | 10,540 | 10,540 | 10,540 | 10,540 | 10,540 | |
| | | | | | | | | | | | |
| Expenses: | | | | | | | | | | | |
| Total Average Expenses | | | 5,545 | 5,545 | 5,545 | 5,545 | 5,545 | 5,545 | 5,545 | 5,545 | |
| | | | | | | | | | | | |
| Monthly Net Income (Loss) | | | 4,995 | 4,995 | 4,995 | 4,995 | 4,995 | 4,995 | 4,995 | 4,995 | |
| | | | | | | | | | | | |
| Monthly Debt Payments: | | | | | | | | | | | |
| Secured Creditor | | | 837 | 837 | 837 | 837 | 837 | 837 | 837 | 837 | |
| Unsecured Creditors | | | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | |
| Total Debt Payments | | | 4,700 | 4,700 | 4,700 | 4,700 | 4,700 | 4,700 | 4,700 | 4,700 | |
| | | | | | | | | | | | |
| Net Cash Flow | | | 295 | 295 | 295 | 295 | 295 | 295 | 295 | 295 | |

| | | Current Balance | | | | | | | | | Remaining Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Secured Creditors: | | | | | | | | | | | |
| Lexus Financial | | 8,603 | 381 | 381 | 381 | 381 | 381 | 381 | 381 | 381 | 5,553 |
| Lexus Financial | | 10,277 | 456 | 456 | 456 | 456 | 456 | 456 | 456 | 456 | 6,633 |
| Unsecured Creditors: | | | | | | | | | | | |
| American Express | 8.8% | 8,180 | 341 | 341 | 341 | 341 | 341 | 341 | 341 | 341 | 5,453 |
| Bank of America | 15.9% | 14,753 | 615 | 615 | 615 | 615 | 615 | 615 | 615 | 615 | 9,835 |
| Bank of America | 13.7% | 12,664 | 528 | 528 | 528 | 528 | 528 | 528 | 528 | 528 | 8,443 |
| Capital One | 5.7% | 5,255 | 219 | 219 | 219 | 219 | 219 | 219 | 219 | 219 | 3,503 |
| Capital One | 8.7% | 8,037 | 335 | 335 | 335 | 335 | 335 | 335 | 335 | 335 | 5,358 |
| Citi Card | 0.6% | 567 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 378 |
| Chase | 12.1% | 11,233 | 468 | 468 | 468 | 468 | 468 | 468 | 468 | 468 | 7,489 |
| Denton Hospital | 2.3% | 2,170 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 1,447 |
| Friedman & Feiger | 5.5% | 5,093 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 3,395 |
| Lexus Financial | 12.4% | 11,533 | 481 | 481 | 481 | 481 | 481 | 481 | 481 | 481 | 7,689 |
| Viewtech Structural | 14.3% | 13,220 | 551 | 551 | 551 | 551 | 551 | 551 | 551 | 551 | 8,813 |
| | | 92,705 | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | 61,803 |

**Lawrence C. Don - Debtor**
**Chapter 11 - Case 10-42622**
**8-Month Budget**
**Projection C-2**

| | Expense Budget (Form B6J) | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Income (net of taxes): | | | | | | | | | | |
| Debtor | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 90,000 | |
| Spouse | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | |
| Equity Loan | | | 25,000 | | | | | | | |
| Interest | | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | |
| Total Average Income | | 10,540 | 35,540 | 10,540 | 10,540 | 10,540 | 10,540 | 10,540 | 90,540 | |
| | | | | | | | | | | |
| Expenses: | | | | | | | | | | |
| Business Expense | | | 25,000 | | | | | | | |
| Total Average Expenses | | 5,545 | 5,545 | 5,545 | 5,545 | 5,545 | 5,545 | 5,545 | 5,545 | |
| | | | | | | | | | | |
| Monthly Net Income (Loss) | | 4,995 | 29,995 | 4,995 | 4,995 | 4,995 | 4,995 | 4,995 | 84,995 | |
| | | | | | | | | | | |
| Monthly Debt Payments: | | | | | | | | | | |
| Secured Creditor | | 837 | 837 | 837 | 837 | 837 | 837 | 837 | 13,023 | |
| Unsecured Creditors | | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | 65,666 | |
| Total Debt Payments | | 4,700 | 4,700 | 4,700 | 4,700 | 4,700 | 4,700 | 4,700 | 78,689 | |
| | | | | | | | | | | |
| Net Cash Flow | | 295 | 25,295 | 295 | 295 | 295 | 295 | 295 | 6,306 | |

| | | Current Balance | | | | | | | | | Remaining Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Secured Creditor: | | | | | | | | | | | |
| Lexus Financial | | 8,603 | 381 | 381 | 381 | 381 | 381 | 381 | 381 | 5,934 | 0 |
| Lexus Financial | | 10,277 | 456 | 456 | 456 | 456 | 456 | 456 | 456 | 7,089 | 0 |
| Unsecured Creditors: | | | | | | | | | | | |
| American Express | 8.8% | 8,180 | 341 | 341 | 341 | 341 | 341 | 341 | 341 | 5,794 | 0 |
| Bank of America | 15.9% | 14,753 | 615 | 615 | 615 | 615 | 615 | 615 | 615 | 10,450 | 0 |
| Bank of America | 13.7% | 12,664 | 528 | 528 | 528 | 528 | 528 | 528 | 528 | 8,970 | 0 |
| Capital One | 5.7% | 5,255 | 219 | 219 | 219 | 219 | 219 | 219 | 219 | 3,722 | 0 |
| Capital One | 8.7% | 8,037 | 335 | 335 | 335 | 335 | 335 | 335 | 335 | 5,693 | 0 |
| Citi Card | 0.6% | 567 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 402 | 0 |
| Chase | 12.1% | 11,233 | 468 | 468 | 468 | 468 | 468 | 468 | 468 | 7,957 | 0 |
| Denton Hospital | 2.3% | 2,170 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 1,537 | 0 |
| Friedman & Feiger | 5.5% | 5,093 | 212 | 212 | 212 | 212 | 212 | 212 | 212 | 3,608 | 0 |
| Lexus Financial | 12.4% | 11,533 | 481 | 481 | 481 | 481 | 481 | 481 | 481 | 8,169 | 0 |
| Viewtech Structural | 14.3% | 13,220 | 551 | 551 | 551 | 551 | 551 | 551 | 551 | 9,364 | 0 |
| | | 92,705 | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | 3,863 | 65,666 | 0 |

Lawrence C. Don - Debtor
Chapter 11 - Case 10-42622
Sale or Refinancing of Homestead
Projection C-3

**Claimants:**

| | | |
|---|---:|---:|
| Class 2 Claimants | | 19,637 |
| Class 3 Claimants: | | |
| America's Servicing Co | 485,471 | |
| Toyota Motor Credit | 8,603 | |
| Toyota Motor Credit | <u>10,277</u> | 504,351 |
| Class 4 Claimants: | | |
| American Express | 8,180 | |
| Bank of America | 14,753 | |
| Bank of America | 12,664 | |
| Capital One | 5,255 | |
| Capital One | 8,037 | |
| Citi Card | 567 | |
| Chase | 11,233 | |
| Denton Hospital | 2,170 | |
| Friedman & Feiger | 5,093 | |
| Lexus Financial | 11,533 | |
| Viewtech Structural | <u>13,220</u> | <u>92,705</u> |
| **Total for Impaired Claimants** | | **616,693** |

**Refinancing:**

| | | |
|---|---|---:|
| Total for Impaired Claimants | | 616,693 |
| Calculation of Loan: | | |
| Possiblity 1: | | |
| Assumed Loan to Value Ratio | | 75% |
| Value of Home Required for Loan | | 822,257 |
| Possiblity 2: | | |
| Assumed Loan to Value Ratio | | 70% |
| Value of Home Required for Loan | | **880,990** |

**Sale:**

| | | |
|---|---|---:|
| Total for Impaired Claimants | | 616,693 |
| Calculation of Break-Even Sales Price: | | |
| Sales Commission | | 10% |
| Closing Costs and Adjustments | | 25,000 |
| Value of Home Required for Loan | | **710,214** |

| | |
|---|---:|
| **Original Cost of Home** | **1,334,000** |
| **Latest Appraisal by Financing Source** | **880,000** |

# Exhibit D

# LIQUIDATION ANALYSIS
## Exhibit "D"
## Disclosure Statement

| | Note | Value (est.) | Chapter 11 Plan | Notes | Chapter 7 Liquidation | Notes |
|---|---|---|---|---|---|---|
| Available Assets: | | | | | | |
| Residence | (a) | 880,000 | 682,736 | (b) | 485,471 | (c) |
| 2 Automobiles | | 43,000 | 18,800 | (d) | 18,880 | (e) |
| Patent | | 150,000 | 150,000 | (f) | 15,000 | (g) |
| Totals | | 1,073,000 | 851,536 | | 519,351 | |
| | | | | | | |
| Less Secured Claims: | | | | | | |
| Note on Residence | | | 485,471 | (c) | 485,471 | (c) |
| Liens on Automobiles | | | 18,880 | (e) | 18,880 | (e) |
| | | | 504,351 | | 504,351 | |
| | | | | | | |
| Net After Secured Claims | | | 347,185 | | 15,000 | |
| | | | | | | |
| Unsecured Claims Paid | | 92,705 | 100% | (h) | 16% | |
| (including contingent claim) | | 2,592,705 | 13% | (i) | 0.6% | |

Notes:

(a) Homestead property owned jointly with Wife. Debtor's one-half equity in the homestead is available for partial distribution only if Plan is confirmed, otherwise will be exempt in chapter 7 case. Value is based on Most recent appraised value. Cost was $1,334,000.

(b) Represents value of Debtor's 1/2 interest in equity of homestead valued at most recent appraisal.

(c) secured Note - disputed with adversary proceeding

(d) Auto value is exempt property; together the cars are worth $43,000 based on "Blue Book"

(e) Total debt owed on autos is $18,880. (see Exhibit "C").

(f) a value determined by Debtor based on historical and projected income from licensing and/or sale

(g) Estimate of liquidation value of Debtor's 1/2 interest in patent. The current value of the Patent is directly related to the involvement of the 2 Inventors listed on the Patent - substantial engineering and release of proprietary information is currently required for the implementation of the Patent technology - this information is intricately involved in the personal knowledge of the Inventors and is mutually held by a Non-Compete Agreement between the Inventors, the release of which would be essential to the effective use of the Patent.

(h) Unsecured creditors total $92,705 (see Exhibit "C"):

(i) Stillwater Nat'l Bank contingent note claim, unassisted to date

# Exhibit "8-&"

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE** | § | |
| | § | |
| **LAWRENCE CHARLES DON** | § | **Case No. 10-42622** |
| 700 Eagles Landing Blvd. | § | |
| Oak Point, Texas 75068 | § | **Chapter 11** (Small Business) |
| SSN:  xxx-xx-7124 | § | |
| | § | |
| **Debtor** | § | |

**ORDER CONDITIONALLY APPROVING DEBTOR'S DISCLOSURE STATEMENT;**
**FIXING TIME FOR FILING ACCEPTANCES OR REJECTIONS OF**
**DEBTOR'S PROPOSED SECOND PLAN OF REORGANIZATION**
**AND/OR OBJECTIONS TO CONFIRMATION OF PROPOSED PLAN**
**AND SETTING HEARING TO CONSIDER FINAL APPROVAL OF**
**DEBTOR'S DISCLOSURE STATEMENT AND**
**CONFIRMATION OF DEBTOR'S SECOND PLAN OF REORGANIZATION**

A disclosure statement under Chapter 11 of the Bankruptcy Code having been filed by the Debtor, **Lawrence Charles Don** ("Debtor") on February 11, 2011 ("Debtor's Disclosure Statement"), and which refers to a proposed Second Chapter 11 Plan of Reorganization filed by the Debtor on January 31, 2011 ("Debtor's Second Plan"), and in light of the Debtor's election to be considered as a small business pursuant to §1121(e) of the Bankruptcy Code and pursuant to the authority granted by 11 U.S.C. §1125(f)(3) and Local Bankr. Rule 3017.1:

**IT IS THEREFORE ORDERED, AND NOTICE IS HEREBY GIVEN, THAT**:

A.      the Debtor's Disclosure Statement is **CONDITIONALLY APPROVED**;

B.      On or before **February 18, 2011,** a copy of this Order, the Debtor's Second Plan and the Debtor's Disclosure Statement as conditionally approved, and a ballot conforming to Official Form 14 shall be mailed to creditors, equity security holders, and other parties in interest, and shall be transmitted to the United States Trustee, as provided in Fed. R. Bankr. P. 3017(d); however, in accordance with

11 U.S.C. §1126(f), acceptances and rejections will not be solicited from any class that is not impaired under the proposed plan;

C.      **March 21, 2011** is fixed as the last day for filing written acceptances or rejections of the Debtor's Second Plan which must be received by **5:00 p.m. (CST)** on that date at the offices of **I. Richard Levy, Esq., Block & Garden, LLP, 5949 Sherry Lane, Suite 900, Dallas, Texas  75225; Fax: 214-866-0991; E-Mail: levy@bgvllp.com.**  No acceptances or rejections received after the stated deadline shall be counted or otherwise included in the tabulation of acceptances and rejections of the Plan without further Court order;

D.      **March 17, 2011** is fixed as the last day for filing and serving written objections to: (1) final approval of the Debtor's Disclosure Statement; and/or (2) confirmation of the Debtor's Second Plan pursuant to Fed. R. Bankr. P. 3020(b)(1) and all comments or objections not timely filed and served by such deadline shall be deemed waived;

E.      The hearing to consider final approval of the Debtor's Disclosure Statement (if a written objection has been timely filed) **and** to consider the confirmation of the Debtor's Second Plan is fixed and shall be conducted on **March 24, 2011** at **1:30 p.m. (CST)** in the Courtroom of the **United States Bankruptcy Court, 660 North Central Expressway, Suite 300B, Plano, Texas  75074** which is located on the Third Floor of the Wells Fargo building.  This hearing may be adjourned or continued as to certain or all matters to a different date without further notice other than notice given in open court at such hearing.

Signed on 2/15/2011

*Brenda T. Rhoades*      SR

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE